UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 24-CR-10059-RGS |
| | ) | |
| AGUSTIN LANDAVERDE-ROMERO, | ) | |
| Defendant. | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Agustin Landaverde-Romero ("Defendant"), a native of El Salvador, now stands
convicted of unlawful reentry of a deported citizen. He was previously deported on one occasion,
in 1999. After his reentry, the Defendant was convicted in Essex County Superior Court of
Massachusetts of rape of child and rape of child by force and sentenced to 20-25 years. For the
reasons outlined, the Government believes that for the conviction of unlawful reentry, a sentence
of 21 months' imprisonment followed by one year of supervised release, and a $100 mandatory
special assessment is appropriate. This represents the low-end of the advisory guideline
sentencing range ("GSR"). The government further requests that the sentence of imprisonment
ordered by this court run consecutive to the Defendant's current term of imprisonment. The
Government asserts its recommendation is fair and reasonable and would adequately meet the
sentencing objectives articulated in 18 U.S.C. § 3553(a).

I.  U.S.S.G. Calculations

Having pled guilty to a one-count indictment charging him with unlawful reentry in
violation of 8 U.S.C. § 1326(a), the Defendant faces a maximum sentence of 2 years of
imprisonment and a 1 year maximum period of supervised release. *See* PSR cover sheet and ¶¶
66-68, 70. The United States Probation Office ("USPO") has determined that his base offense

1

level ("BOL") is 8, pursuant to USSG §2L1.2(a). *See* Presentence Report ("PSR") ¶ 18. Since after the Defendant was ordered deported/removed from the United States for the first time, he engaged in criminal conduct that at, anytime, resulted in a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years of more (*see* PSR ¶ 30), the offense level is increased by 10 levels, pursuant to USSG §2L1.2(b)(3)(A). *See* PSR ¶ 19. This results in an adjusted offense level ("AOL") of 18. *See* PSR ¶ 23. With a three-point reduction for acceptance of responsibility under USSG §§ 3E1.1(a) and (b), the Defendant's Total Offense Level ("TOL") is 15. *See* PSR ¶¶ 25-27.

USPO has calculated the Defendant's Criminal History Category as II. *See* PSR ¶¶ 31-32. This is based on the Defendant's 2023 convictions for Rape of a Child (Count One) and Rape of a Child with Force (Count 2) in Essex Superior Court where he received a 20-25 years committed state sentence followed by 3 years of probation.[1] The charges stem from a minor female relative of the Defendant who disclosed being raped by the Defendant from the ages of approximately 3-4 years old until she was approximately 13 years old. On July 13, 2020, the Defendant was arrested in that case. *See* PSR ¶ 30. For those convictions, the Defendant receives 3 criminal history points. *See* USSG § 4A1.1(a) and PSR ¶ 30. A total criminal history score of three establishes a criminal history category ("CHC") of II. *See* PSR ¶¶ 31-32. The advisory GSR for a TOL of 15 and a CHC of II is 21-27 months. However, as the statutorily authorized maximum sentence of imprisonment for illegal reentry under 8 U.S.C. § 1326(a) is two years, and because that is less than the maximum of the guideline range, the advisory guidelines range

---

[1] As outlined in the PSR, as of May 14, 2025, the date the final PSR issued, according to Massachusetts Department of Correction records, the Defendant is eligible for parole on Mach 21, 2040 and has a projected release date of November 11, 2044.  *See* PSR ¶ 30.

is 21 to 24 months. *See* PSR ¶ 67 and USSG § 5G1.1(c)(1). The PSR properly calculated the

Defendant's advisory guideline sentencing range and the statutorily authorized maximum

sentence.

   II.  Application of the 18 Section § 3553(a) Factors

     The advisory Guidelines are "the starting point and the initial benchmark" in sentencing.

*Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Court is tasked with crafting a sentence

that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. §

3553(a). *See id*. Because each case is unique, the Court must make a particularized analysis of

the nature and circumstances of the offense as well as Defendant's history and characteristics.

*See* 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the

seriousness of the crime, promotes respect for the law, and provides just punishment. The

sentence should also adequately deter criminal conduct, protect the public, and provide any

necessary education, training, or treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must

also strive to avoid unwarranted sentencing disparities among defendants with similar records

who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). After determining

the appropriate sentence, the Court should adequately explain its rationale to "allow for

meaningful appellate review and to promote the perception of fair sentencing." *See Gall*, 552

U.S. at 50.

     The Government asserts its recommendation accounts for the factors outlined in 18

U.S.C. § 3553(a) that the Court must consider. The factors include the nature and circumstances

of the offenses, the history and characteristics of the Defendant, the seriousness of the offenses,

promoting respect for the law, providing just punishment for the offense, the need to deter the

3

Defendant and others, the need to protect the public from the Defendant's crimes, and the need to avoid unwarranted sentencing disparities.

    A. <u>Nature and circumstances of offense and Defendant's criminal background which includes unlawfully reentering the United States and two child rape convictions</u>

Under the § 3553(a) factors, the Court may properly consider the nature and circumstances of the offense as well as the Defendant's criminal history and characteristics in determining an appropriate sentence in this unlawful reentry case. This now-57 year old Defendant is native and citizen of El Salvador who does not have lawful status in the United States. *See* PSR ¶¶ 9, 13. On July 6, 1999, he entered the United States without inspection near Brownsville, Texas. On July 9, 1999, he was encountered by United States Border Patrol in Texas and was served with a Notice to Appear. On September 23, 1999, he was ordered removed by an Immigration Judge in Texas. On October 7, 1999, he was removed from Texas to El Salvador and his photograph, fingerprint and signature, are all contained on the warrant of removal. *See* PSR ¶¶ 9-10.

At an unknown date and place thereafter, the Defendant illegally reentered the United States without the appropriate permission. Thereafter, on or about July 13, 2020, the date of offense listed in the indictment, Immigration and Customs Enforcement ("ICE") became aware that the Defendant was back in the country following his arrest on the above-referenced state charges. Those state charges ultimately resulted in the Defendant's May 31, 2023, conviction after trial of two crimes: Rape of Child and Rape of Child by Force. *See* PSR ¶ 30. In that case, he was sentenced to a term of 20-25 years in state prison followed by 3 years of probation.[2]

---

[2] That case is under appeal. *See* PSR ¶ 30.

On June 23, 2023, the Defendant was encountered by ICE during a screening of inmates at the Massachusetts Correctional Institute ("MCI")-Shirley state prison. On July 21, 2023, ICE submitted the Defendant's fingerprints, including his fingerprint card taken at MCI Shirley on May 31, 2023, and a copy of his fingerprint from the October 7, 1999, warrant of removal document, to the FBI for comparison. FBI analysis confirmed the two prints were a match to one another and to the Defendant's unique FBI number. *See* PSR ¶ 12. Further, there is no evidence in the Defendant's alien file that he requested or was granted the required permission from the Attorney General of the United States or the Secretary of the Department of Homeland Security to re-enter the United States following his deportation. *See* PSR ¶ 13.

The Defendant's background, including his upbringing and family life in El Salvador, his family members murders in El Salvador, his educational background which consisted of discontinuing school in the first grade due to the civil war in El Salvador, his employment while residing in the United States which involved prepping meals in restaurants, working as a janitor and working odd jobs, as well as his mental and emotional health history/treatment, are detailed in the PSR. *See* PSR ¶¶ 53-58, 61, 63.

B. The Defendant's Sentence Should Reflect his Lack of Respect for the Laws of the United States and Should Provide Just Punishment

This Defendant was removed from the United States in 1999. Despite his deportation, he was not deterred because he thereafter reentered this country without the appropriate permission. And after his unlawful reentry, he continued his lawlessness when he committed very serious sex crimes against his minor relative occurring over the span of many years while here. He is currently serving a lengthy state prison sentence for those rape of child and rape of child by force convictions. While in this country unlawfully, the Defendant has demonstrated a lack of respect

5

and a disregard for the laws of the United States. The Government's recommended sentence promotes respect for the law and provides just punishment.

C. Specific and General Deterrence

Specific and general deterrence are also factors for the Court to consider. *See* 18 U.S.C. §3553(a)(2)(B),(C) (the district court may impose a sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"). The Government contends that a sentence of 21 months for the unlawful reentry offense, to run consecutive to his state sentence, will serve an important deterrence function to both the Defendant and others who contemplate unlawfully reentering the United States. A sentence from this court for unlawful reentry will serve as a specific deterrent to dissuade the Defendant from seeking to reenter the country unlawfully again and more generally, to others who may contemplate such conduct as general deterrence is an equally important consideration. This sentence will also serve to protect the public from the Defendant, who has reentered the United States and refused to abide by its laws.

III. The Defendant Should Serve a Consecutive Sentence For Deterrence Purposes and to Avoid Sentencing Disparities

The Defendant should serve consecutive sentences for his rape of a child convictions and for his unlawful reentry conviction. Per 18 U.S.C. § 3584(a), multiple terms of imprisonment imposed at different times run consecutively unless the court orders them to run concurrently. The imprisonment terms for the Defendant's child rape convictions have already been imposed by a state court in 2023. He now awaits sentencing before this court for his unlawful reentry conviction which is currently scheduled for May 21, 2025. Therefore, the relevant statute contemplates such sentences should run consecutively, as they are being imposed at different

times.

The Government sees no reason for the Court to order that the Defendant's sentences run concurrently. Ordering the sentences to run concurrently could incentivize offenders, like this Defendant, to commit multiple offenses once in the country, including very serious ones such as this Defendant's state court convictions, knowing they would only bear the burden of one punishment should they be caught by law enforcement. Additionally, it would be unfair to other defendants similarly situated, who enter the country unlawfully and choose not to commit additional serious offenses, if this Defendant did not have to serve any additional time. In addition to unfairness, the Government asserts that it would create a sentencing disparity to not give the Defendant any time to serve for the unlawful reentry offense solely because he committed other, very serious crimes, while others who only commit unlawful reentry are ordered to serve sentences within the guidelines.[3]

IV.   Supervised Release

Although the Defendant faces deportation due to this conviction, the Government requests a one year period of supervised release be imposed following any period of incarceration. Should supervised release be imposed and should the Defendant again unlawfully reenter the United States, in addition to facing a new charge in violation of 8 U.S.C. § 1326, he would also face a violation of the terms of supervised release on this case.

---

3 According to the Judiciary Sentencing Information ("JSIN") data, during the last five fiscal years (FY 2020-2024), for the 2173 defendants with a USSG § 2L1.2 guideline and with a total offense level of 15 and CHC II (i.e., the same as this defendant's), who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 16 months and the medial length of imprisonment was 15 months. *See* PSR ¶ 83.

7

V.      Conclusion

For the above reasons, the Government recommends a sentence of 21 months followed

by a one-year term of supervised release and a $100 mandatory special assessment. The

Government further requests that this sentence be imposed consecutive to his current term of

imprisonment. This recommended sentence is fair and just and comports with the § 3553(a)

factors.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:     */s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

Date: May 16, 2025